**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Auto Club Insurance Association, Auto Club Group Insurance Company, MemberSelect Insurance Company, Fremont Insurance Company, and Meemic Insurance Company,

Plaintiffs,

v.

Adam Berry,

Defendant.

Case No. 26-cv-13940

Hon. Matthew F. Leitman

Mag. Judge Elizabeth A. Stafford

---

Thomas W. Cranmer (P25252)
Russell J. Bucher (P82349)
Miller, Canfield, Paddock and Stone, P.L.C.
840 W. Long Lake Rd., Suite 150
Troy, MI 48098
(248) 267-3381
cranmer@millercanfield.com
bucher@millercanfield.com

---

# PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

In violation of federal and Michigan criminal and civil law, Defendant Adam Berry, a Michigan-licensed attorney, recorded a private call between an insurance claims specialist for Plaintiff MemberSelect Insurance Company and a third-party attorney representing an injured claimant (the "Second Call"). Berry then used that illegal recording to extort MemberSelect and its affiliates, threatening to release a curated excerpt from that call (the "Selective Recording") to accuse them of

engaging in abhorrent systemic intentional discrimination by race, religion, and ethnicity in their claims handling unless they paid him off. As Mr. Berry has threatened and knows full well, his divulging of the Selective Recording or its contents would do irreparable harm to Plaintiffs' business reputation, customer relationships, and goodwill in the Michigan automobile insurance marketplace.

Mr. Berry now intends to make good on his threat to release the Selective Recording, after Plaintiffs on October 15, 2026 informed Berry that they would not accede to his threats and extortionary demands. Because Plaintiffs are fully justified in concluding from Mr. Berry's course of conduct that Berry will respond to Plaintiffs' filing of the Complaint against him (ECF No. 1) by making good on his threat, Plaintiffs have no choice but to ask this Court for immediate temporary relief enjoining Berry from doing so until a hearing can be held on Plaintiffs' request for a preliminary injunction.

Pursuant to E.D. Mich. LR 7.1(a)(2)(C), concurrence in this motion has not been sought because of the emergent nature of the relief requested.

WHEREFORE, as further explained and supported in the attached supporting brief and declarations, Plaintiffs move this Court for Temporary Restraining Order, substantially in the form of the attached Exhibit 1, and Preliminary Injunction against Defendant that (a) immediately restrains and enjoins Defendant from using or divulging the Selective Recording or any information obtained from it; (b)

immediately restrains and enjoins Defendant from using or divulging any further or different recording made of the Second Call at the direction of Defendant or any agent of Defendant ("Other/Further Recording"), or any information obtained from such Other/Further Recording; and (c) orders Defendant to immediately serve—upon any persons to whom Defendant or any agent of Defendant has divulged the Selective Recording, Other/Further Recording, or any information obtained from the Selective Recording or Other/Further Recording—a copy of any order from this Court granting relief to Plaintiffs in response to this Motion.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Thomas W. Cranmer

Thomas W. Cranmer (P25252)
Russell J. Bucher (P82349)
840 W. Long Lake Rd., Suite 150
Troy, MI 48098
(248) 267-3381
cranmer@millercanfield.com
bucher@millercanfield.com
*Attorneys for Plaintiffs*

Dated: October 15, 2026

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Auto Club Insurance Association, Auto Club Group Insurance Company, MemberSelect Insurance Company, Fremont Insurance Company, and Meemic Insurance Company,

Plaintiffs,

v.

Adam Berry,

Defendant.

Case No. 26-cv-13940

Hon. Matthew F. Leitman

Mag. Judge Elizabeth A. Stafford

---

Thomas W. Cranmer (P25252)
Russell J. Bucher (P82349)
Miller, Canfield, Paddock and Stone, P.L.C.
840 W. Long Lake Rd., Suite 150
Troy, MI 48098
(248) 267-3381
cranmer@millercanfield.com
bucher@millercanfield.com

---

**PLAINTIFFS' BRIEF SUPPORTING THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS


**Page**

STATEMENT OF ISSUES PRESENTED .......... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .......... iii

INTRODUCTION .......... 1

BACKGROUND .......... 3

- A. The Parties and the Private Nature of Claims Calls. .......... 3
- B. Defendant Berry Arranges the Second Call and Secret Recording. . .......... 4
- C. Berry Uses the Selective Recording to Threaten Plaintiffs. .......... 5
- D. The Threatened Harm Is Immediate. .......... 7

LEGAL STANDARD .......... 8

ARGUMENT .......... 9

- I. PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS. .......... 9
  - A. Defendant Has Violated Michigan's Eavesdropping Statute. .......... 10
  - B. Defendant Has Violated the Federal Wiretap Act. .......... 14
  - C. Defendant Has Extorted Plaintiffs. .......... 16
- II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION. .......... 19
- III. DEFENDANT WILL NOT BE HARMED BY THE ISSUANCE OF AN INJUNCTION. .......... 21
- IV. THE PUBLIC INTEREST FAVORS PROTECTION AGAINST ILLEGAL EAVESDROPPING, WIRETAPPING, AND EXTORTION. .......... 22

RELIEF REQUESTED .......... 23

## ISSUES PRESENTED

1. Defendant Adam Berry solicited and secured a recording of a private telephone call between an insurance claims specialist for Plaintiff MemberSelect Insurance Company and an attorney representing an injured claimant. Berry subsequently used that secret recording to threaten and extort MemberSelect and its affiliated insurer Plaintiffs. As Berry knows, his release of the recording would cause irreparable harm to Plaintiffs, including their business reputation and customer goodwill, and Berry has given Plaintiffs a deadline of October 16, 2026 to agree to pay him off. Should this Court grant a temporary restraining order and preliminary injunction enjoining Berry from using or divulging the recording and its contents pending a final determination on the merits of Plaintiffs' federal and state claims that Berry committed illegal wiretapping/eavesdropping and extortion?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*Cerelux Ltd. v. Yue Shao*, No. CV-17-02909, 2017 WL 4769445 (C.D. May 3, 2017)

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007)

*Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264 (6th Cir. 2016)

*Cooper-Keel v. Keel-Worrell*, No. 1:22-cv-1236, 2023 WL 11882942 (W.D. Mich. Nov. 3, 2023)

*Dickerson v. Raphael*, 461 Mich. 851; 601 N.W.2d 108 (1999)

*Doe v. Edlow*, 836 F. Supp. 3d 775 (S.D. Ohio 2026)

*Earley v. Smoot*, 846 F. Supp. 45 (D. Md. 1994)

*Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, 544 F. Supp. 2d 592 (E.D. Mich. 2008)

*Fisher v. Perron*, No. 20-12403, 2021 WL 103633 (E.D. Mich. Jan. 12, 2021)

*Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022)

*Gardner v Wood,* 429 Mich 290; 414 N.W.2d 706 (1987)

*Handel's Enters., Inc. v. Schulenberg*, 765 F. App'x 117 (6th Cir. 2019)

*Huff v. Spaw*, 794 F.3d 543 (6th Cir. 2015).

*Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2009)

*Lagonoy v. Gun*, No. 356629, 2022 WL 496252 (Mich. Ct. App. Feb. 17, 2022)

*Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587 (6th Cir. 2001)

*Nali v. Philips*, 681 F.3d 837 (6th Cir. 2012)

*People v. Stone*, 463 Mich. 558; 621 N.W.2d 702 (2001)

*Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112 (E.D. Mich. 2019)

*RECO Equip., Inc. v. Jeffrey S. Wilson*, No. 20-4312, 2021 WL 5013816 (6th Cir. Oct. 28, 2021)

*Salita Promotions Corp. v. Ergashev*, 500 F. Supp. 3d 648 (E.D. Mich. 2020)

*SecureInfo Corp. v. Bukstel*, No. Civ.A-03-679, 2003 WL 21961370 (E.D. Pa. May 8, 2003)

*Six Clinics Holding Corp. v. Cafcomp Sys., Inc.,* 119 F.3d 393 (6th Cir.1997)

*Sullivan v. Gray*, 117 Mich. App. 476; 324 N.W.2d 58 (1982)

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981)

**Statutes**

18 U.S.C. § 2510(4)

18 U.S.C. § 2511

18 U.S.C. § 2520

Mich. Comp. Laws § 750.539a

Mich. Comp. Laws § 750.539c

Mich. Comp. Laws § 750.539e

Mich. Comp. Laws § 750.539h

Mich. Comp. Laws § 750.213

## INTRODUCTION

This case arises from Defendant Adam Berry's secret procurement of a recording of a private telephone call between a claims specialist for Plaintiff MemberSelect Insurance Company and an attorney representing an injured claimant, and Berry's subsequent use of that recording to threaten and extort MemberSelect and its affiliated insurers. Berry did not participate in the call and had no role in the underlying insurance claim. Instead, after hearing a secondhand account of an earlier conversation, he directed the claimant's attorney to call the claims specialist again, attempt to elicit statements that could damage Plaintiffs' reputation and business goodwill, and record the resulting conversation for Berry without the knowledge or consent of the claims specialist or MemberSelect.

Berry then caused counsel acting on his behalf to send Plaintiffs a recording of a selectively chosen excerpt from the call, together with a purported complaint accusing Plaintiffs of systemic intentional discrimination by race, religion, and ethnicity. The threatened complaint was not a good-faith effort to vindicate a viable legal claim. Berry was its sole proposed plaintiff, even though the alleged injuries belonged, if to anyone, to other persons or entities, and Berry's automobile-insurance clients were third-party litigation funders rather than injured claimants. Yet Berry demanded $40,000,000.00 to “settle.” That’s because $40,000,000.00 was actually

Berry’s price for not releasing the recording; pointedly, Berry promised that, if paid, he would destroy his copies of it and refrain from divulging its contents.

Berry's later statements dispelled any possible doubt about the object of his campaign. During a September 10, 2026 call with Plaintiffs' counsel, Berry said that Plaintiffs should “look closer” at his claims but did not address any aspect of the frivolous proposed complaint. He instead immediately emphasized Plaintiffs' size and cash reserves, remarked that he was not asking for one billion dollars, and mused that public release of the recording would expose Plaintiffs to more than $100 million in legal fees from other lawsuits. The message was unmistakable: pay Berry, or else he would release the recording and use accusations of invidious discrimination to inflict massive reputational harm.

Berry gave Plaintiffs a final deadline of October 16, 2026, and has every incentive to carry out his threat as soon as this action is filed. Once the recording or its contents are released, the resulting damage to Plaintiffs' reputation, customer goodwill, competitive position, workforce, and ongoing operations cannot be undone or fully remedied at final judgment. The requested temporary restraining order and preliminary injunction are therefore necessary to preserve the status quo so that Plaintiffs can be vindicated on the merits instead of irreparably harmed.

The requested relief is narrow. Plaintiffs do not ask the Court to adjudicate, on an emergency record, every factual dispute between the parties or to restrain

Berry's lawful activities unrelated to the recording. They ask only that Berry be temporarily prohibited from using or divulging a recording that was procured through unlawful eavesdropping and wiretapping and then used as the instrument of an extortionate demand. The governing factors strongly favor that relief: Plaintiffs are likely to succeed on their statutory and common-law claims; disclosure threatens immediate and irreparable injury; an order requiring Berry to refrain from using unlawfully obtained material causes him no cognizable harm; and the public interest favors protection against illegal eavesdropping and wiretapping, and against extortion.

## BACKGROUND

### A. The Parties and the Private Nature of the Claims Call

Plaintiffs Auto Club Insurance Association, Auto Club Group Insurance Company, MemberSelect Insurance Company, Fremont Insurance Company, and Meemic Insurance Company are Michigan insurers. ACIA, ACGIC, and MemberSelect conduct business using the AAA brand; Meemic and Fremont do not. Although the five companies are affiliated, Meemic and Fremont maintain their own claims departments. Defendant Adam Berry is a Michigan-licensed attorney who practices through The Law Offices of Berry and Berry, PLLC.

In 2024, a MemberSelect claims specialist (identified here and in Plaintiffs' Complaint as Ms. W) adjusted certain first-party and third-party bodily-injury claims

under Michigan no-fault policies. Her responsibilities included telephone discussions with injured claimants and their attorneys. Those calls are private, because they involve confidential medical information, protected personal information, and settlement negotiations. MemberSelect does not disclose the contents of such calls outside the company, securely stores information obtained during the calls, and instructs claims specialists not to conduct the calls where third parties might overhear. Ms. W likewise understood and expected that such calls would not be recorded or monitored by outsiders. (See Ex. 3, Miller Decl., ¶¶ 2–6; Ex. 2, W Decl., ¶¶ 4–16.)

**B. Defendant Berry Arranges the Second Call and Secret Recording**

In approximately September 2024, attorney Hani Azakir spoke by telephone with Ms. W about a third-party injury claim against MemberSelect (the "First Call"). Afterward, Azakir encountered Berry in the building where both attorneys maintained offices and described statements or opinions that Azakir attributed to Ms. W concerning AAA's handling of claims by race, religion, and ethnicity.

Berry recognized the leverage that such accusations could create. He asked Azakir to call Ms. W again about the same claim, attempt to elicit similar statements, and record the follow-up call for Berry. Azakir agreed. Approximately one week after the First Call, he placed the follow-up call (the "Second Call"), attempted to elicit damaging statements about Plaintiffs' claims-handling practices, recorded

some or all of the conversation by audiovisual means, and delivered the recording to Berry. Neither Azakir nor Berry requested permission from Ms. W or MemberSelect, and neither disclosed that the Second Call was being recorded. Had Ms. W been asked, she would not have consented and would not have continued unless assured that no recording would be made. (See Ex. 2, W Decl., ¶ 17; Ex. 6-A, Azakir EUO, *passim*.)

The circumstances support the conclusion that Berry arranged the recording to obtain material that could be used against Plaintiffs. Berry was not a party to the Second Call, did not represent a participant in the underlying claim, and had no legitimate role in its adjustment. The version of the recording later sent to Plaintiffs (the "Selective Recording") did not capture the entire conversation, omitting context that would reveal the claims-negotiation setting, the discussion of protected medical and personal information of Mr. Azakir's client, and the context of Ms. W statements from the Second Call.

**C. Berry Uses the Selective Recording to Threaten Plaintiffs**

On January 4, 2026, attorney Robert Akouri, acting for Berry, emailed Michael Kramer, then counsel for Plaintiffs. The email attached the Selective Recording, a purported examination under oath of Mr. Azakir, and a draft pleading (the "Sham Complaint"). Akouri demanded immediate "facilitation" and stated, with emphasis, that if the matter was not facilitated and resolved by February 1, 2026, he

had been instructed by Berry to file the complaint. The email and attachments were intended to communicate that Berry would publish or otherwise divulge the recording and its contents unless Plaintiffs paid him. (See Ex. 6, 01/04/2026 Email.)

The Sham Complaint underscored the absence of anything like a legitimate dispute, or even a borderline one. It named Berry as the plaintiff and accused "Automobile Club Insurance Association (AAA)" of racially, religiously, and ethnically discriminatory claims handling. It alleged that Berry's "clients" had received reduced settlements or denials and that his fee income and litigation expenses had suffered as a result, despite his later admissions that his automobile-insurance clients were third-party litigation funding companies, which obviously do have neither race, nor religion, or nor ethnicity. For those reasons, Berry had no conceivable standing or cause of action. Berry also purported to sue in his individual capacity, despite his later admission that "his" clients are actually clients of his firm. (See Ex. 6-C, Sham Complaint; Ex. 5, Bohannon Decl. ¶ 8–9.) Plaintiffs identified these defects to Berry and Akouri and asked for any supporting evidence, but neither supplied a meaningful response. (See Ex. 5, Bohannon Decl. ¶¶ 5–6.)

Berry nevertheless demanded $40,000,000.00, an amount no attorney could possibly think was reasonable (even when posturing) given the allegations in the Sham Complaint. Berry also represented that, if Plaintiffs paid, he would destroy his copies of the Selective Recording and not divulge its contents. And the demand

extended to all five Plaintiffs: Akouri supplied a list of insurance claims for which Berry asserted damages that included policies issued by ACIA, ACGIC, MemberSelect, Meemic, and Fremont. (See Ex. 5, Bohannon Decl., ¶¶ 8–9, 14.)

Berry's own words made the threat crystal clear. On September 10, 2026, Akouri was holding a call with Plaintiffs' attorneys concerning another possible "facilitation." Berry unexpectedly joined after the call began. He urged Plaintiffs to look "deeper" at his claim, but did not discuss anything about it. Instead, he asserted that Plaintiffs were a $6 billion company with $2 billion in cash reserves, stated that it was not as though he were asking for one billion dollars, and said that public release of the recording would cause Plaintiffs to spend well over $100 million defending other lawsuits. (Ex. 5, Bohannon Decl., ¶ 12.)

**D. The Threatened Harm Is Immediate**

Berry has identified Friday, October 16, 2026 as Plaintiffs' last opportunity to resolve the matter. (See Ex. 5, Bohannon Decl., ¶ 12.) In light of Berry's course of conduct, Plaintiffs reasonably expect that filing this action will prompt him to release the Selective Recording or its contents before he can be heard in opposition to a motion for preliminary injunction.

Disclosure would immediately expose Plaintiffs to the precise injuries Berry has invoked as leverage: damage to business reputation and customer goodwill, impairment of their competitive position in Michigan's automobile-insurance

market, disruption of employee morale and recruiting, and diversion of personnel and resources from their core operations. Those consequences would spread upon disclosure and could not be recalled, reliably calculated, or fully remedied by a later damages award. (See Ex. 4, Robison Decl., ¶¶ 7–11.)

## LEGAL STANDARD

The purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "When considering a motion for preliminary injunction, a district court must balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). "These four considerations are 'factors to be balanced, not prerequisites that must be met." *Id.* (citation omitted). Courts consider the same four factors when determining whether to grant a temporary restraining order. *Stein v. Thomas*, 222 F. Supp. 3d 539, 542 (E.D. Mich. 2016).

## ARGUMENT

### I. PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS THAT DEFENDANT UNLAWFULLY RECORDED THE SECOND CALL.

When faced with a motion for a preliminary injunction (or temporary restraining order), a court considers as the first factor to be balanced "the likelihood that the movant will succeed on the merits." *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009). The movant "is not required to prove his case in full at a preliminary injunction hearing" to demonstrate such a likelihood, *Camenisch,* 451 U.S. at 395 (1981), though "[i]n order to establish success on the merits of a claim, a plaintiff must show more than a mere possibility of success." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.,* 119 F.3d 393, 402 (6th Cir.1997) (citation omitted). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* (citation omitted).

"Where multiple claims are at issue, the movant need only show a likelihood of success on the merits of one claim." *Doe v. Edlow*, 836 F. Supp. 3d 775, 811 (S.D. Ohio 2026) (citing cases, including *Six Clinics Holding Corp.,* 119 F.3d at 402). Here, Plaintiffs have a likelihood of success on all of their claims.

### A. Defendant Has Violated Michigan's Eavesdropping Statute

The core Michigan statute outlawing "eavesdropping" provides, in full:

> Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both.

Mich. Comp. Laws § 750.539c.

For purposes of the statute section, the term "eavesdrop" includes "record[ing] . . . any part of the private discourse of others without the permission of all persons engaged in the discourse." Mich. Comp. Laws § 750.539a. Michigan law expressly provides a civil cause of action against an eavesdropper for violations. *See* Mich. Comp. Laws § 750.539h.

Michigan's statute is generally a one-party consent law, so that "a participant in a conversation does not violate MCL 750.539c by recording the conversation without the other party's knowledge or consent." *See*, *e.g.*, *Fisher v. Perron*, No. 20-12403, 2021 WL 103633, at *4 (E.D. Mich. Jan. 12, 2021) (quoting *People v. Williams, No.* 346689, 2020 WL 2601567, at *3 (Mich. Ct. App. May 21, 2020)). As the Michigan Court of Appeals stated in *Sullivan v. Gray*, the leading case that established Michigan as a one-party state, *see id.*, "a potential eavesdropper must be

a third party not otherwise involved in the conversation being eavesdropped on." 117 Mich. App. 476, 481; 324 N.W.2d 58 (1982).

However, in *Sullivan* and subsequent caselaw, the Michigan courts have carved out one major exception to the "one-party" rule, which provides for Defendant's liability here:

> ***While a participant may record a conversation with apparent impunity, his sole consent is insufficient to make permissible the eavesdropping of a third party***. . . . When a third party is unilaterally given permission to listen in upon a conversation, unknown to other participants, those other participants are no longer able to evaluate and form accurate expectations since they are without knowledge of the third party. Therefore***, it is not inconsistent to permit a person to record and utilize conversations he participates in yet deny him the right to unilaterally grant that ability to third parties.***

*Sullivan*, 117 Mich. App. at 482 (emphasis added). In other words, "a participant [in a conversation] may not unilaterally permit a third party to listen in upon a conversation." *Bloom v. Pegasus Investigations, Inc.*, No. 200796, 1998 WL 1991219, at *2 (Mich. Ct. App. June 23, 1998) (citing *Dickerson v. Raphael*, 222 Mich. App. 185, 198; 324 N.W.2d 58 (1997), judgment reversed in part on other grounds, 461 Mich. 851; 601 N.W.2d 108 (1999)). Because eavesdropping includes both "overhear[ing]" and "record[ing]," Mich. Comp. Laws § 750.539a, it follows that a participant may no more unilaterally permit a third party to record a conversation than to listen in on it. *See* Mich. Comp. Laws § 750.539a. Accordingly, Mr. Azakir had no authority to permit Defendant to record the Second Call, as Mr.

Azakir did when he acted as Mr. Berry's agent in taking the recording. In a word, Mr. Azakir's "sole consent [was] insufficient to make permissible the eavesdropping of a third party," such as Defendant Berry. *Sullivan*, 117 Mich. App. at 482. For that reason, Berry is not shielded from liability for eavesdropping by Michigan's general status as a "one-party" state.

For liability to attach under the Michigan eavesdropping statute, the recorded conversation must also be "private." Mich. Comp. Laws § 750.539c. For purposes of the statute, a "private conversation" is one "reasonably expect[ed] to be free from casual or hostile intrusion or surveillance." *People v. Stone*, 463 Mich. 558, 563; 621 N.W.2d 702 (2001). Whether a conversation is private depends on the intent and reasonable expectation of the plaintiff. *Dickerson v. Raphael*, 461 Mich. 851; 601 N.W.2d 108 (1999). This "privacy" standard derives from the statutory language alone, and does not incorporate any Fourth Amendment jurisprudence. *Id.*

The facts set forth in the Complaint and attested to by Ingramar ("Van") Miller and Ms. W demonstrate that MemberSelect (and Ms. W) intended and reasonably expected that the Second Call would be free from casual or hostile intrusion or surveillance. Such calls between claims specialists and injured claimants (or their attorneys) involve discussing highly confidential medical information and other protected personal information, and regularly involve claims-settlement discussions as well. (Ex. 3, Miller Decl., ¶ 6.) Accordingly, claims specialists are not to conduct

such calls where they may be overheard by the public or anyone not affiliated with the company. (Id., ¶ 5). And Ms. W—who worked remotely at the time of the Second Call—did not hold such calls in a public place or where the calls could otherwise be overheard. (Ex. 2, W Decl., ¶ 11.) MemberSelect does not divulge the contents of such calls to anyone not affiliated with the company, and information acquired during the calls is securely stored and protected. (Ex. 3, Miller Decl., ¶ 4.) Ms. W would not have allowed a claimant or claimant's attorney to record such a call. (Ex. 2, W Decl., ¶ 17.)

From Ms. W's experience alone, moreover, it is clear that it was abundantly reasonable to expect the Second Call to be private. From her almost two decades of work as a claims specialist, she is not aware of any other instance when a claimant (or their attorney) recorded such a call with her or with any other claims specialist. (Ex. 2, W Decl., ¶ 15.) And the fact that, with the advent of smartphones, the ability to secretly record conversations is now widespread does not in any way defeat the point. "[A] person is not unreasonable to expect privacy in a conversation although he knows that technology makes it possible for others to eavesdrop on such conversations." *Stone*, 463 Mich. at 568.

For all of these reasons, Defendant's recording of the Second Call violated § Mich. Comp. Laws § 750.539c. Because Defendant subsequently used and divulged the Selective Recording of the Second Call and other information obtained from that

Selective Recording—among other things, to extort Plaintiffs—with full knowledge of how the recording was obtained, Defendant also violated Michigan's companion prohibition against any such use or divulging of information known to have been obtained in violation of Mich. Comp. Laws § 750.539c. *See* Mich. Comp. Laws § 750.539e. And Michigan common law provides MemberSelect with a cause of action against Mr. Berry for those further violations. *See*, *e.g.*, *Lagonoy v. Gun*, No. 356629, 2022 WL 496252, at *2 (Mich. Ct. App. Feb. 17, 2022) ("[w]here a penal statute is silent concerning whether a violation of its provisions should give rise to a civil remedy, courts will infer a civil remedy for the violation") (quoting *Gardner v Wood,* 429 Mich 290, 301; 414 N.W.2d 706 (1987), citing in turn W. PAGE KEETON ET AL., PROSSER & KEETON ON TORTS 222 (5th ed., 1984).)

### B. Defendant Has Violated the Federal Wiretap Act

Under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, commonly known as the Wiretap Act, it is

> unlawful to "intentionally intercept[ ] ... any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The act defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4). Title III further prohibits intentional disclosure or use of "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of wire, oral, or electronic communication in violation of [Title III]." *Id.* § 2511(1)(c), (d). In addition to criminal penalties, Title III provides injured parties with a private right of action against violators. *Id.* § 2520(a).

*Huff v. Spaw*, 794 F.3d 543, 548 (6th Cir. 2015).

The Wiretap Act has a one-party consent exception that is broader than Michigan's, insofar it applies where the interception either is done by a party to the communication "or where one of the parties to the communication has given prior consent to [the] interception." 18 U.S.C. § 2511(2)(d). However, that exception does not apply—and thus a statutory violation exists notwithstanding a participant's consent to the interception—where the interception was made "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

Accordingly, recording of telephone calls will give rise to a civil cause of action for violation of the Wiretap Act where the recording was done "with the purpose of committing either a criminal or tortious act." *Fisher v. Perron*, 30 F.4th 289, 298–99 (6th Cir. 2022). And in this case, Mr. Berry's actions both at the time of the recording and after give rise to the reasonable conclusion that his purpose for recording the Second Call was to use it to threaten and extort the Plaintiffs in violation of federal criminal law and Michigan civil and criminal law. (See Compl. ¶ 80, ECF No. 1, PgID.17 (listing federal and Michigan statutes that Defendant intended to violate by recording the Second Call)).

Berry may contend that the recording of the Second Call was done merely out of idle curiosity, and point to the purported statement under oath of Hani Azakir

in support—that Berry "suggested that I call back and record the conversation really just because he didn't believe me." (Ex. 6-A, Azakir EUO, at 21:1–3.) But Mr. Azakir has no privileged access to Defendant's internal thoughts and intentions. More fundamentally, it strains credulity to suggest that a licensed attorney would arrange for the secret recording of a telephone call concerning a matter in which he was not involved merely out of idle curiosity. The objective factual record of Mr. Berry's subsequent actions provides the most reliable evidence of Mr. Berry's purposes in arranging for the illicit recording in the first place. And as discussed below, that objective record demonstrates above all else Mr. Berry's intent to extort Plaintiffs and threaten their business reputation and goodwill.

### C. Defendant Has Extorted Plaintiffs

Plaintiffs are likely to succeed on the merits of their claim that Defendant Berry committed extortion under Michigan law by maliciously threatening to release the Selective Recording, and thereby injure Plaintiffs, their reputation, and their business goodwill, with the intent to extort money from Plaintiffs and to compel Plaintiffs to pay money to Defendant against Plaintiffs' will.

"Michigan courts recognize the tort of civil extortion based upon the criminal extortion statute, Mich. Comp. Laws § 750.213." *Cooper-Keel v. Keel-Worrell*, No. 1:22-cv-1236, 2023 WL 11882942, at *6 (W.D. Mich. Nov. 3, 2023) (citing cases). In full, the statute provides:

> Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Mich. Comp. Laws § 750.213. "The Sixth Circuit [has] distilled the following elements from the statute:

> (1) maliciously threaten, orally or by written or printed communication;
> (2) either
>   (a) to accuse another of any crime or offense or
>   (b) to cause injury to the person or property or mother, father, husband, wife of another;
> (3) with intent thereby either to
>   (a) extort money or any pecuniary advantage whatever, or
>   (b) compel the person so threatened to do or refrain from doing any act against his will."

*Cooper-Keel*, 2023 WL 11882942, at *6 (citation omitted).

The facts shown in the declarations and other supporting documents attached to this Motion clearly satisfy all of these elements. Mr. Akouri's January 4, 2026 email on Berry behalf attached the Selective Recording and was intended as, and intended to be understood as, a threat to publish or otherwise divulge the contents of the Selective Recording. (See Ex. 6.) Berry himself is an attorney, yet no competent attorney would believe that the draft complaint he threatened to file was remotely viable. (*See* Ex. 6-C, Sham Complaint.) Yet Mr. Berry made a "settlement" demand

of $40,000,000.00, adding that if Plaintiffs paid the demand, he would destroy his copies of the Selective Recording and not divulge its contents. (Ex. 5, Bohannon Decl., ¶ 14.) And most damningly, in September 2026 Mr. Berry suddenly logged onto a call with Plaintiffs' attorneys and told them that Plaintiffs should "look deeper" at his claim, then immediately proceeded to say that Plaintiffs were a $6 billion company with $2 billion in cash reserves and that "It's not like I'm asking for one billion dollars." Mr. Berry then mused that if the recording of the Second Call were to go public, Plaintiffs would spend well over $100 million in legal fees defending against other lawsuits. (Ex. 5, Bohannon Decl., ¶ 12.)

Defendant may contend that he never made a sufficiently clear, unambiguous communication to constitute a "threat" that he would release the Selective Recording. But for purposes of the statute, Defendant need not have made a direct, unequivocal statement that he would release the Selective Recording unless Plaintiffs paid him off. "Whether a threat was actually implied or intended by the defendant" is a question of fact. *Nali v. Philips*, 681 F.3d 837, 842 (6th Cir. 2012). "Although the threat must be intelligible . . . no overt act is required." *Id.* (citations omitted). The upshot of Defendant's communications—including above all Defendant's demand of $40,000,000.00 for "settlement" of the baseless Sham Complaint and destruction of the Selective Recording, and Defendant's statement that Plaintiffs would spend well over $100 million in legal fees in other cases if the

Selective Recording came to light—was clear to Plaintiffs' attorneys and any other reasonable observer: Plaintiffs needed to pay up or else Defendant would harm them by releasing the Selective Recording.

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION.

As a result of Defendant's unlawful eavesdropping/wiretapping, threats, and extortion, Plaintiffs are already suffering operational harm. (See Ex. 4, Robison Decl., ¶ 11.) However, the extent and the types of harm sustained by Plaintiffs would expand drastically if Defendant were to make good on his threats to release the Selective Recording. (See id., ¶¶ 7–11.) Defendant already told Plaintiffs that their last chance to pay him off is this Friday, October 16. (See Ex. 5, Bohannon Decl., ¶ 12.) Plaintiffs therefore have no choice but to seek preliminary relief from this Court now to prevent the imminent, extensive, irreparable harm that would result from Defendant making good on his threats.

Defendant's release of the Selective Recording or other divulging of its contents would cause significant harm to the business reputation and customer goodwill of Plaintiffs, as well as significant harm to their competitive position in the Michigan auto-insurance marketplace. (See Ex. 4, Robison Decl., ¶ 8.) It would also likely inflict significant operational harm on Plaintiffs, including by negatively impacting employee morale, relationships between employees and management, and employee-recruitment efforts. (Id., ¶ 10.) Defendant's release of the Selective

Recording or other divulging of its contents would also cause substantial operational harm in the form of continued diversion from attention to the core business of all five Plaintiffs. (Id., ¶ 11.)

In a variety of different contexts this Court, and the Sixth Circuit, have repeatedly recognized similar harms as irreparable. A risk to a plaintiff's reputation threatens irreparable harm. *See Salita Promotions Corp. v. Ergashev*, 500 F. Supp. 3d 648, 654 (E.D. Mich. 2020) (citation omitted); *Nexus Gas Transmission, LLC v. City of Green, Ohio*, 757 F. App'x 489, 494 (risk of harm to "business reputation"). The same goes for "loss of customer goodwill" and damage to "competitive position." *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001); *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 279 (6th Cir. 2016). *See also Handel's Enters. v. Schulenberg*, 765 F. App'x 117, 125 (6th Cir. 2019) (recognizing "loss of fair competition and customer goodwill" as irreparable harm).

In addition, it would be difficult if not impossible to calculate the full extent and economic impact of the harms Plaintiffs would suffer from Defendant's release of the Selective Recording or other divulging of its contents. (See Ex. 4, Robison Decl., ¶¶ 9–11.) That these harms would therefore not be fully remediable at final judgment only further underscores their irreparability and Plaintiffs' pressing need for preliminary relief from this Court to prevent Defendant from inflicting them on Plaintiffs. *See, e.g.*, *RECO Equip., Inc. v. Jeffrey S. Wilson*, No. 20-4312, 2021 WL

5013816, at *4 (6th Cir. Oct. 28, 2021) ("An injury is irreparable if the harm is difficult to calculate."); *Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, 544 F. Supp. 2d 592, 603 (E.D. Mich. 2008) (a party's harm is irreparable when it cannot be adequately compensated by money damages).

## III. DEFENDANT WILL NOT BE HARMED BY THE ISSUANCE OF AN INJUNCTION.

By contrast, Defendant will suffer no harm in being restrained from using his illegal recording of the Second Call and any information obtained from it. In the two years since Defendant made the Selective Recording, and in the more than 9 months since Defendant first threatened Plaintiffs to release it, the only use to which Defendant has put the Selective Recording has been to extort Plaintiffs by threatening to further divulge it or its contents.

Defendant has pursued his regular occupation as an attorney that entire time, and Defendant will continue to be completely free to do so if the court issues the requested injunction in Plaintiffs' favor. This is thus not an instance where true economic or other injury to the defendant would result from the requested injunction—as it is, for example, in cases involving trade secrets or disputed intellectual-property rights, or enforcement of a noncompetition agreement. And even in such cases, courts have readily found that any injury to the party to be enjoined is far outweighed by the prospective harm to the party seeking injunctive relief, where the party to be enjoined simply would be required to abide by the law

or an agreement it freely made. *See*, *e.g.*, *Handel's Enters.*, 765 F. App'x at 125 (affirming that any harm suffered by defendants would be "self-inflicted" and "the result of Defendants' willful actions," and would be outweighed by the harm to plaintiff.) Similarly, any harm to Defendant that could conceivably result from issuance of the requested injunction here would be self-inflicted and entirely the result of Defendant's willful unlawful wiretapping and extortion. Defendant should be required to comply with the law pending a final decision on the merits.

## IV. THE PUBLIC INTEREST FAVORS PROTECTION AGAINST ILLEGAL EAVESDROPPING AND WIRETAPPING AND AGAINST EXTORTION.

Lastly, the public interest also weighs in favor of granting the requested relief. Indeed, "there is no question that the public interest" in protection against eavesdropping (and wiretapping) "is exceedingly strong, as witness Congress's imposition of not only civil, but also felony criminal, liability upon violators." *Earley v. Smoot*, 846 F. Supp. 451,454 (D. Md. 1994). And for purposes of a preliminary injunction in general, it is "axiomatic that the public has an interest in the enforcement of legislatively enacted laws." *Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112, 1135 (E.D. Mich. 2019) (citation omitted). In this case, that public interest arises through not only federal law but also state law: the Michigan Penal Code not only imposes felony criminal liability for both recording the private conversations of others, *see* Mich. Comp. Laws § 750.539c, and using or

divulging any information obtained from such a recording, *see* Mich. Comp. Laws § 750.539e, but affirmatively provides an affirmative civil cause of action for violations, *see* Mich. Comp. Laws § 750.539h.

Finally, the public interest favors discouraging extortion attempts, particularly when the information the extortionist is threatening to release was wrongfully acquired or is confidential. *See*, *e.g.*, *Cerelux Ltd. v. Yue Shao*, No. CV-17-02909, 2017 WL 4769445, at *8 (C.D. May 3, 2017); *SecureInfo Corp. v. Bukstel*, No. Civ.A-03-679, 2003 WL 21961370, at *8 (E.D. Pa. May 8, 2003). In addition, it would be antithetical to the entire policy of extortion law to leave extorted parties with no way to immediately prevent an extortionist from carrying out his threats other than by giving in to the extortionist's demand.

## **RELIEF REQUESTED**

For these reasons, and all of the reasons discussed in this Motion and Supporting Brief, Plaintiffs respectfully request that the Court enter an *ex parte* Temporary Restraining Order, substantially in the form of the attached Exhibit 1, and Preliminary Injunction against Defendant that (a) immediately restrains and enjoins Defendant from using or divulging the Selective Recording or any information obtained from it; (b) immediately restrains and enjoins Defendant from using or divulging any further or different recording made of the Second Call at the direction of Defendant or any agent of Defendant ( "Other/Further Recording"), or

any information obtained from such Other/Further Recording; and (c) orders Defendant to immediately serve—upon any persons to whom Defendant or any agent of Defendant has divulged the Selective Recording, Other/Further Recording, or any information obtained from the Selective Recording or Other/Further Recording—a copy of any order from this Court granting relief to Plaintiff in response to this Motion.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Thomas W. Cranmer
Thomas W. Cranmer (P25252)
Russell J. Bucher (P82349)
840 W. Long Lake Rd., Suite 150
Troy, MI 48098
(248) 267-3381
cranmer@millercanfield.com
bucher@millercanfield.com
*Attorneys for Plaintiffs*

Dated: October 15, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

By: *<u>/s/ Russell J. Bucher</u>*
Russell J. Bucher (P82349)