# EXHIBIT 2

# DECLARATION OF DELSENA WHITTY

This declaration is based on my personal knowledge, and I can competently testify to the facts below if called and sworn as a witness.

1. For the entire calendar year 2024, I was a Claims Specialist who adjusted certain insurance claims for Auto Club Insurance Association, Auto Club Group Insurance Company, and MemberSelect Insurance Company. I had adjusted claims for those insurers since approximately 2009.

2. I have never been employed by or acted as an agent for Fremont Insurance Company or Meemic Insurance Company, and in particular I have never adjusted any insurance claims for Fremont Insurance Company or Meemic Insurance Company.

3. The only automobile insurance claims I ever adjusted for Auto Club Insurance Association, Auto Club Group Insurance Company, and MemberSelect Insurance Company were for first-party and third-party claims under Michigan no-fault insurance policies for benefits arising out of bodily injuries sustained in auto-related accidents. However, I never adjusted any claims for Personal Protection Insurance (commonly known as "PIP") benefits.

4. Part of my job responsibilities when adjusting automobile insurance claims for Auto Club Insurance Association, Auto Club Group Insurance Company, and MemberSelect Insurance Company was to conduct telephone conversations with individuals who had such claims, or with their attorneys.

5. I understood from my training and experience as a Claims Specialist that MemberSelect treats such calls as private and that I was not to divulge the contents of such calls to anyone not affiliated with the company.

6. I understood from my training and experience as a Claims Specialist that I was to securely store and protect any documents and information I used or acquired during those calls.

7. I understood from my training and experience as a Claims Specialist that those calls were private for several reasons, including because they involve discussing highly confidential medical information and personal identifying information of the claimant and because they also regularly involve discussing and negotiating settlement of claims.

8. Based on the confidential and sensitive nature of the information discussed during such calls, I would never expect that a claimant or claimant's attorney would allow another person to listen in on such a call, let alone that they would allow a third party to record the call.

9. During the entire year 2024, I did all of my work as a Claims Specialist remotely from my residence.

10. When I was working remotely and held a telephone call with a claimant or their attorney while I was working remotely, I understood from my training and experience that I was not to hold the call in a public place or where the call could be overheard.

11. When I was working remotely and held a telephone call with a claimant or their attorney, I did not hold that call in a public place or where the call could be overheard. I conducted the call using a landline in a dedicated workspace in my residence.

12. When conducting such calls with a claimant or their attorney, I try to establish and maintain a good rapport with the person I'm talking to. I'm a chatty, agreeable person anyway, so that tends to come naturally.

13. In 2026, I learned that a call I had with an attorney named Hani Azakir regarding his client's third-party auto insurance claim against MemberSelect had been recorded.

14. Other than that, I am not aware of any instance, at any time, when a claimant or their attorney (or a third party) has recorded such a call with me or with any other Claims Specialist.

15. I am not even aware of an instance when a claimant or their attorney even asked whether they could record a call with me (or told me that they were recording our call). I'm also not aware of any instance when a claimant or their attorney asked another Claims Specialist whether they could record their call with her (or told her that they were recording their call).

16. I was therefore shocked to learn that such a call with me had been recorded.

17. If a claimant or claimant's attorney ever asked to record their call with me, I would have told them that was not allowed. And unless they acknowledged that and promised they wouldn't record the call, I would have discontinued the call.

18. I have listened to the recording of my 2024 call with Mr. Azakir. The recording is 2 minutes and 23 seconds long.

19. I do not remember the specifics of the 2024 call that was recorded, but it is clear to me based on my experience and my knowledge of how I conduct such calls that the recording does not capture my entire call with Mr. Azakir, including portions of the call when Mr. Azakir and I almost certainly discussed the claims of Mr. Azakir's client.

20. I am executing this declaration within the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Delsena Whitty

Delsena Whitty

Date: 10/15/2026