**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Auto Club Insurance Association, Auto Club Group Insurance Company, MemberSelect Insurance Company, Fremont Insurance Company, and Meemic Insurance Company,

Plaintiffs,

v.

Adam Berry,

Defendant.

Case No. 2:26-cv-13940

Hon. Jonathan J.C. Grey

Mag. Judge Elizabeth A. Stafford

Thomas W. Cranmer (P25252)
Russell J. Bucher (P82349)
Gabrielle M.A. Bayne (P88706)
Miller, Canfield, Paddock and Stone, P.L.C.
840 W. Long Lake Rd., Suite 150
Troy, MI 48098
(248) 267-3381
cranmer@millercanfield.com
bucher@millercanfield.com
bayne@millercanfield.com
*Attorneys for Plaintiffs*

Robert Akouri (P43788)
Akouri & Associates, P.L.L.C.
18306 Middlebelt Road
Livonia, MI 48152
akouripllc@yahoo.com
*Attorneys for Defendant*

# **PLAINTIFFS' REPLY SUPPORTING THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs reply as follows to Defendant's Response (ECF 21) to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF 12):

## I. The TRO Was Not Obtained Without Notice or Without Material Facts.

Defendant begins his brief by claiming that Plaintiffs obtained an *ex parte* temporary restraining order without notice and by omitting material facts. (See Response, pp. 6, 8–9, 14–17.[1]) Both of those claims are false.

At 6:23 p.m. on October 15, 2026, Plaintiffs' counsel emailed Defendant's counsel, Robert Akouri, an as-filed copy of Plaintiffs' Complaint (ECF 1), Plaintiffs' unredacted Motion for TRO and Preliminary Injunction (previously filed as ECF 5), and other initial filings. (See Ex. 7.) That was a mere eight minutes after Plaintiffs filed their Motion. The email was sent to robert@akouripllc.com, (see id.), which is one of the two email addresses registered to Mr. Akouri's ECF account (see Ex. 8). At 2:19 p.m. the next day, Plaintiffs' counsel sent Mr. Akouri Plaintiffs' redacted Motion (ECF 12), the Court's Notice of Hearing (ECF 14), and the Zoom hearing invite, less than one hour after the Court issued the Notice and invite. (See Ex. 9.) Defendant never claims that his counsel did not timely receive those emails or the attached case filings, and never provides any reason for failing to appear at the

[1] Because Defendant's Response was filed under seal, there do not appear to be PageID numbers for use in citing to the Response in this Reply.

hearing.[2] There is thus no basis for Defendant's characterization of the Court's Temporary Restraining Order (ECF 17) as issued *ex parte* and without notice.

Given that the Motion was ***not*** filed and heard ex parte and without notice, Defendant's allegation that Plaintiffs omitted "material facts" in the Motion, (see Response pp. 8–9) is irrelevant. That aside, the "omitted facts" are false, immaterial, or both:

- There was a "facilitation" scheduled for October 16, but Mr. Berry had stated on September 10, 2026 that Plaintiffs had to "make a counteroffer" by that day and this was the "last delay," meaning that Berry would release the recording unless Plaintiffs agreed by October 16 to pay him. (Bohannon Decl., ECF 12-6, PgID.634; Ex. 11, Bohannon Supp. Decl. ¶ 12.) The parties had agreed that if Plaintiffs would not be doing so, they should tell that to Defendant by October 15, 2026—the day before the scheduled facilitation. (Ex. 11, ¶ 10.)

- The fact that Judge Groner sent Mr. Berry a Zoom invite for the September 10 call only means that Mr. Berry's joining of that call was not unexpected by Judge Groner and Mr. Berry's counsel, not by Plaintiffs' counsel. And regardless of whether anyone expected Mr. Berry to join the call, it is the what Mr. Berry said during the call that is material, not Mr. Berry's expected or unexpected participation in the call.

- Plaintiffs did not request destruction of the recording and confidentiality; that was part of Defendant's unilateral "settlement" proposal. (See Ex. 11, Bohannon Supp. Decl. ¶¶ 4, 9; Ex. 12, Dombrowski Decl. ¶ 10.) This is only one of multiple false statements Mr. Berry makes in his affidavit. (See Ex. 11, Bohannon Supp. Decl. ¶¶ 4, 9, 13; Ex. 12, Dombrowski Decl. ¶¶ 16–17.)

- The fact that Mr. Berry "offered" to "walk away" if Plaintiffs would give him

[2] Plaintiffs' counsel sent all of the relevant filings to Mr. Akouri again, at his other registered ECF/PACER email address, at 4:13 p.m. on October 16, after the Court's Zoom videocall had started but before the hearing proper had begun. (See Ex. 10.)

***all of their claims data*** and if ***Mr. Berry*** then decided that he found no evidence of discrimination is entirely immaterial. Put bluntly, no reasonable person would expect an insurer or other company to completely open its confidential books to an opportunistic attorney who was already holding the recording over the company's head.

- Defendant's assertion that "the only alternative to settlement was a lawsuit" is Disingenuous. It omits the material facts, discussed in Plaintiff's Motion, showing that Mr. Berry's threatened lawsuit was merely a vehicle for his threat to dilvulge the contents of the recording. Indeed, in his entire Response Defendant nowhere even *tries* to rebut one of Plaintiffs' central points on this score: the threatened lawsuit was objectively frivolous.

## II. The Court Should Extend the TRO or Grant a Preliminary Injunction.

### A. Defendant Does Not Contest That Plaintiffs Will Suffer Irreparable Harm.

The most important factor when deciding whether to grant a preliminary injunction (or TRO) is irreparable harm. *See*, *e.g.*, *Cooper-Standard Automotive Inc. v. Daikin America, Inc.*, 568 F. Supp. 3d 846, (E.D. Mich. 2021). In his Response, however, Defendant does nothing to bring into question the magnitude, immediacy, or irreparability of harm that Plaintiffs would suffer absent preliminary relief from this Court. Instead, Defendant's only relevant contention is that Plaintiffs unreasonably delayed seeking preliminary injunctive relief. (See Response, p. 25 (citing *Allied Erecting & Dismantling Co. v. Genesis Equipment & Mfg'g, Inc.*, 511 F. App'x 398 (6th Cir. 2013)).[3] And that contention fails.

---

[3] Defendant's other arguments on irreparable harm are not about Plaintiffs' harm but about the alleged harm to *Defendant* from a purported "prior restraint." (See Response, pp. 25–26.) Plaintiffs address that argument below. *See infra*, pp. 9–10.

As the Sixth Circuit itself later characterized its rule of decision in *Allied Erecting*, "a six-year delay in seeking injunctive relief weighed against [a] finding of irreparable harm." *York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 308 (6th Cir. 2019). In *York Risk*, moreover, the Court of Appeals approvingly cited authority that even a delay of two or three years did not justify denying injunctive relief. *Id.*, at 309 (citation omitted). It then held that the plaintiff's at-most six-month delay in filing suit and requesting injunctive relief was not unreasonable. *Id.*

Nothing remotely resembling the facts of *Allied Erecting* exists here, as Plaintiffs promptly sought relief from this Court soon after Defendant set a final deadline for them to pay him off. Specifically, Plaintiffs filed their Complaint on October 15, 2026, after Defendant stated on September 10, 2026 that that Plaintiffs needed to show up with a "counteroffer" by October 16 and that this was the "last delay," meaning that Berry would release the recording unless Plaintiffs agreed by October 16 to pay him. (Bohannon Decl., ECF 12-6, PgID.634; Ex. 11, Bohannon Supp. Decl. ¶ 12.) Plaintiffs filed their unredacted Motion the same day as their Complaint, and filed their redacted Motion the next morning (ECF 12).

**B. Plaintiffs Have a Sufficient Likelihood of Success on the Merits.**

Instead of devoting appropriate attention to irreparable harm—the most important factor in the analysis—Defendant instead devotes most of his brief to the argument that this Court should not grant injunctive relief because "Plaintiffs have

no likelihood of success on the merits." But that sweeping, categorical assertion, which is based on purported facts provided by the Defendant, cannot possibly succeed at this stage of the case. Discovery has yet to begin; sufficient circumstantial evidence already supports Plaintiffs' eavesdropping and wiretapping claims; ***Defendant makes multiple false statements in his affidavit, and the Court should reject it out of hand***; and none of the purported facts from Defendant would vitiate Plaintiffs' extortion claim even if they were true. Plaintiffs need only show a sufficient likelihood of success on the merits of one of their claims, (see Motion, ECF No.12, PgID.597 (citing cases)), and have done so for all three of their claims.

1. Eavesdropping

Defendant argues that Plaintiffs have "no likelihood of success" on their claim under Michigan's eavesdropping statute because Plaintiffs' "argument that Mr. Azakir was an agent for Mr. Berry [in recording the Second Call] is a quantum leap in assumption" and "refuted by" Mr. Azakir's assertions in his affidavit. (Response, p. 18.) But Defendant cites no law on what is and is not required to create an agency relationship for purposes of Michigan's wiretap statute (or, for that matter, to create an agency relationship for other purposes). (See id., pp. 17–19.) Instead, Defendant cites to Azakir's affidavit, in which Azakir states, among other things: "I was not acting as Mr. Berry's agent. He did not direct, control, or compensate me in

connection with the later call, and I did not make the recording for him or at his direction." (Response Ex. B, ¶ 6.)

Obviously, Plaintiffs cannot probe the veracity of all of Mr. Azakir's assertions in his affidavit without the benefit of discovery. But even at this stage, the Court should not take Mr. Azakir's new assertions at face value. Mr. Azakir previously admitted that he had no thought or intent to record the Second Call until Mr. Berry told him to "call back and record the conversation." (ECF 12-7, PgID.702:21–703:2.) Azakir also agreed that the import of Berry's words to Azakir were "go record it, go get a recording." (Id., PgID.704:1–2.) These admissions cannot be squared with Azakir's post-hoc assertions that "I did not make the recording for [Berry] or at his direction," or, as Defendant states in his brief, Mr. Azakir "decided on his own to record the call." (Response p. 19.) Given the utter unreliability of Berry and Azakir's assertions at this stage, it is appropriate to base an injunction upon the eavesdropping act alone, in order "to preserve the existing state of things until the rights of the parties can be fairly and fully investigated." *In re DeLorean*, 755 F.2d 1223, 1229 (6th Cir. 1985) (citation omitted).

2. Wiretapping

Defendant argues that Plaintiffs have "no likelihood of success" on their claim under the federal Wiretap Act because "the relevant purpose is that of the person who intercepted the communication, and [Plaintiffs] offer[] no evidence that Mr.

Azakir had any purpose other than the one he describes." (Response p. 19.) But as already addressed immediately above, Azakir has already admitted that he recorded the call for Mr. Berry. And where one person procures another to intercept a call, liability under the Wiretap Act turns on the ***procurer's*** purpose for the interception. *See*, *e.g.*, *Dawson v. Univ. of Phoenix*, No. 1:25-cv-03497, 2026 WL 92248, at *15 (N.D. Ill. Jan. 13, 2026) (finding plaintiff plausibly alleged procurer liability under the Wiretap Act by pleading that defendant "procured third-party entities for the purpose of intercepting communications and obtaining data [. . .] protected by law.") And given Defendant's knowledge of and experience with the auto-insurance industry, and especially his subsequent actions, it is more than reasonable to conclude that Mr. Berry's purpose for procuring the recording was to use damaging statements he thought would be recorded as leverage to extort Plaintiffs.

3. Extortion

Defendant appears to recognize that Plaintiffs have presented this Court with compelling evidence that Defendant has engaged in extortion. He nonetheless takes two tacks in trying to defeat the conclusion that Plaintiffs have demonstrated a more than sufficient likelihood of success on the merits. Both fail.

First, Defendant tries to argue that he can't be liable for extortion when "the alternative to settlement was a lawsuit." (Response p. 21.) But Plaintiffs' argument is not that Defendant's mere threat to file a lawsuit, baseless as it was, constitutes

extortion. It is that Defendant's threatened "lawsuit" was a sham created and intended for a completely different end than vindicating any legal rights: threatening to divulge the contents of the Selective Recording.

Another example helps illustrate the point. Imagine a random person steals a company's trade secrets. He then threatens the company that, unless they pay him $40,000,000, he will file a lawsuit claiming (frivolously) that those trade secrets belong to him, and sends the company a draft complaint that lays out those trade secrets in full detail for the world to see immediately upon filing. He then demands "facilitation" sessions, during which he brings home to the company the extent of the harm it would suffer if he were to file the complaint.

On Defendant's logic, such facts could not give rise to an extortion claim as a matter of law. That would be absurd and inequitable, and is not the law. *See*, *e.g.*, *United States v. Koziol*, 993 F.3d 1160, 1170–1172 (9th Cir. 2021) (defendant's threat to file a lawsuit against entertainer asserting allegations of sexual harassment, sexual assault, and assault and battery rose to the level of a sham, and thus defendant was subject to criminal liability for extortion under the Hobbs Act, where the threat to sue was an implied threat that scandalous allegations in a publicly filed lawsuit would damage the entertainer's reputation). The fact that Defendant nowhere in his Response contests that his Sham Complaint was anything but objectively frivolous only strengthens the point for this case.

Second, Defendant tries to muddy the facts to create a "contested record," (see Response pp. 21–23), and then concludes that a "record this contested cannot supply the clear showing a preliminary injunction requires," (Response p. 23). But the "facts" Defendant adduces are either outright false or immaterial, as already discussed above and as addressed in further detail in the attached declarations. *See supra*, pp. 2–3; Ex. 11, Bohannon Supp. Decl., *passim*; Ex. 12, Dombrowski Decl., *passim*. And Defendant's conclusion is based on a misrepresentation of law. Plaintiffs do not need to demonstrate a "clear showing" or meet any other "quantum of proof" as to their likelihood of success on the merits in order to justify a preliminary injunction; instead, the court examines all four preliminary injunction factors and asks whether "on balance," those four factors clearly weigh in Plaintiffs' favor. *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 514 (6th Cir. 2026).

**C. The Prior Restraint Doctrine Does Not Allow Defendant to Make Good on His Threats.**

Defendant's arguments regarding the balancing of harms under the prior restraint doctrine also fail. Defendant would have the Court believe that the doctrine renders a court powerless to stop an extortionist from making good on his threat, including when making good on the threat means divulging information that the extortionist secured by illegal means in the first place. And here, Defendant's admission that he has sat on the information for more than two years, and the absence of any sworn statement from Defendant that he intends to use the information for

anything other than making good on his threats to Plaintiffs, only underscore the absence of any cognizable harm to Defendant that would result from this Court extending the TRO and granting a preliminary injunction.

In any event, undersigned counsel is unaware of any case holding that enjoining someone who is not a member of the media from using or divulging the contents of an illegally wiretapped call or conversation constitutes an impermissible prior restraint. Defendant does not cite any such decision, and indeed does not even cite a standard for what constitutes a prior restraint in this or any other context. By contrast, courts in multiple cases have granted equitable relief to bar the future use or disclosure of illegally obtained recordings, which 18 U.S.C. § 2520(b)(1) expressly countenances. *See*, *e.g.*, *Earley v. Exec. Bd. Of United Transp. Union*, 957 F. Supp. 997 (N.D. Ohio 1996); *Earley v. Smoot*, 846 F. Supp. 451 (D. Md. 1994); *Williams v. Poulos*, 801 F. Supp. 867 (D. Me. 1992), judgment aff'd, 11 F.3d 271 (1st Cir. 1993); *Menda Biton v. Menda*, 796 F. Supp. 628 (D.P.R. 1992), corrected, 812 F. Supp. 282 (D.P.R. 1992). And that makes sense, because persons who have obtained information in violation of the Wiretap Act "are without First Amendment Protection." *Boehner v. McDermott*, 332 F. Supp. 2d 149, 169 (D.D.C. 2004).

**III. No Bond Is Required Given the Lack of Pecuniary Harm to Defendant.**

Defendant cites to Fed. R. Civ. P. 65(c) and states, without further explanation, that a "substantial bond" should be required. (Response p. 28.) That conclusory

assertion is frivolous. The purpose of security under Rule 65(c) is to "protect[] the enjoined party from any ***pecuniary injury*** that may accrue while a wrongfully issued equitable order remains in effect." *RECO Equip., Inc. v. Jeffrey S. Wilson*, 2021 WL 5013816, at *5 (6th Cir. 2021) (citing *Brown v. City of Upper Arlington*, 637 F.3d 668, 674 (6th Cir. 2011)) (emphasis added). And the onus lies on an enjoined defendant to provide actual evidence of such injury. *See Bosley v. Wildwett*, 310 F. Supp. 914, 936 (6th Cir. 2004). Moreover, "courts have appropriately waived a bond requirement where defendants' damages are merely speculative." *Id.* (citations omitted). Because Defendant has provided no evidence of non-speculative pecuniary harm, or any pecuniary harm at all, the Court should rule that no bond is required.

## CONCLUSION

For these reasons, and for all of the reasons discussed in their Motion, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and grant Plaintiffs such further or other relief as the Court deems just and appropriate.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Thomas W. Cranmer

Thomas W. Cranmer (P25252)
Russell J. Bucher (P82349)
Gabrielle M.A. Bayne (P88706)
840 W. Long Lake Rd., Suite 150
Troy, MI 48098
*Attorneys for Plaintiffs*

Dated: October 26, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Russell J. Bucher*
Russell J. Bucher (P82349)