# EXHIBIT 11

**Supplemental Declaration of Ryan D. Bohannon**

In accordance with 28 U.S.C. § 1746, Ryan D. Bohannon declares as follows:

1. I submitted a declaration in support of Plaintiffs' motion on October 15, 2026. (ECF No. 12-6, PageID.630-35.) I submit this supplemental declaration to respond to the Declaration of Adam Berry, specifically paragraph 8 (the April 17, 2026 facilitation) and paragraphs 13 through 18 (the September 10, 2026 video conference and the October 16, 2026 facilitation date). (ECF No. 21-1, ¶¶ 8, 13-18.)

2. I disagree with other statements and characterizations in Mr. Berry's declaration as well. This declaration addresses only the paragraphs identified above, and my silence on the rest should not be taken as agreement. I will attend the October 28, 2026 hearing in person, and I am prepared to testify that day or on any later date the Court sets, except that I will be out of town and unavailable from November 4 through November 9, 2026.

3. As before, the Auto Club does not waive, and I do not intend to waive, the attorney-client and work-product privileges. This declaration describes only my communications with Mr. Akouri, Mr. Berry, and the facilitator, the Honorable David Groner (Ret.), and documents exchanged with them. In my first declaration, I did not describe what Judge Groner said during the facilitations or what I said to him, out of respect for his role as the facilitator. Mr. Berry's declaration and response brief now put those communications directly at issue.

4. Mr. Berry states that at the April 17, 2026 facilitation I asked for confirmation that all recordings would be destroyed, and that I said his firm could not represent anyone who brought a discrimination claim against the Auto Club. (ECF No. 21-1, ¶ 8.) That is false. Neither I nor, to my knowledge, anyone at the Auto Club ever asked Mr. Berry, Mr. Akouri, Mr. Azakir, or Judge Groner for confidentiality, for destruction of the recording, or for any limit on the clients they could represent or the claims they could bring against the Auto Club. Those terms came from Mr. Berry and Mr. Akouri. They offered them repeatedly, and each time I reminded them that the Auto Club had not asked for such terms. I told Judge Groner the same thing.

5. The Auto Club never countered Mr. Berry's $40,000,000 demand. It never proposed a single settlement term, of any kind, to Mr. Berry, Mr. Akouri, or Judge Groner.

6. The April facilitation was held at my firm's office. At one point during that day, after Mr. Berry had demanded $40,000,000, Judge Groner brought me into the conference room with Mr. Berry and Mr. Akouri. I tried to address the lack of merit in Mr. Berry's claims. That part of the conversation lasted only a few minutes. Neither Mr. Akouri nor Mr. Berry offered any evidence to support their claims or responded to the procedural and substantive problems I raised. Instead, they answered my arguments by pivoting to confidentiality. Mr. Akouri told me that I had said, in our prior conversations, that the Auto Club needed confidentiality over the recording and the allegations in the draft complaint. I cut him off and corrected him: the Auto Club had

requested nothing, and it was Mr. Akouri who had told me, since our first conversation, that the Auto Club needed confidentiality. Mr. Akouri did not dispute that. He went on to describe what would happen to the Auto Club unless it settled and obtained confidentiality: lost business, embarrassment from publicity, copycat lawsuits from other personal injury attorneys, and class actions by insureds, medical providers, and funds like the one Mr. Berry represented.

7. During that conversation, I challenged Mr. Akouri and Mr. Berry on whether the confidentiality they were offering had any value at all, given their responsibilities as attorneys. I said, in essence, that I understood they were selling confidentiality, but I asked how attorneys could possibly deliver it when they owe a duty to represent their clients, including in current and future cases against the Auto Club. That is when they made their offer: Mr. Akouri said they would walk away from future clients with similar discrimination-based claims against the Auto Club. I stood up, took a notepad and pen from the cabinet in my firm's conference room, and told them I was going to write down exactly what they had just said. I asked Mr. Akouri to repeat the offer, wrote it down verbatim, and read it back to Mr. Akouri and Mr. Berry. They confirmed I had written their offer down correctly. My note reads: "The offer is we will walk away from future clients w/ similar claim[s] against ACG; I read this to him; they said 'yes'; 12:20 pm." A copy of my note is attached as Tab 1.

8. When we returned to our own conference room, I raised the issue with Judge Groner again. I told him that Michigan Rule of Professional Conduct 5.6(b)

prohibits an agreement that restricts an attorney's right to practice, that the Auto Club would never accept the offer Mr. Akouri and Mr. Berry had just made, and that any promise of meaningful confidentiality in this case would likely violate MRPC 5.6(b).

9. Mr. Berry relies on Mr. Akouri's May 3, 2026 email to me and Judge Groner, which again falsely claimed that "Ryan wanted assurances that if we settled, he wanted the destruction of all recordings and a confidentiality agreement to be signed by all sides and their attorneys." (ECF No. 12-6, PageID.677-79.) That email says nothing about my asking for any limit on the practice of law, because that never happened. The very next day, I corrected in writing the claim that I or the Auto Club had ever asked for destruction of evidence or confidentiality: "From our first conversation to mediation, you have offered assurances of confidentiality, destruction of the recording, and commitments that the attorneys involved would walk away from similar discrimination-based claims against the Auto Club in the future. . . . I want to be clear that none of these have been requests from our side. The Auto Club has neither sought nor encouraged any of them." (*Id.* at PageID.677.) Mr. Akouri's May 8 reply did not dispute my account. Instead, he repeated the offer he had been making since our first conversation: Mr. Berry's team "is prepared, as part of any successful settlement, to execute appropriate confidentiality statements and will affirm the proper destruction of documents." (*Id.* at PageID.675-76.)

10. The parties had scheduled the third facilitation for September 23, 2026. Availability and business needs on the Auto Club's side prevented it from attending that

day, so I called Judge Groner and asked to move the facilitation to the next date everyone could attend. Apparently, Mr. Berry became upset. Judge Groner told me that Mr. Berry's side wanted a conference call, and he told me two things. First, Mr. Akouri or Mr. Berry, or both, believed that someone on the Auto Club's side had requested a promise that they "wouldn't sue AAA again." I told him that was not true. I reminded him that from the beginning I had told Mr. Akouri and Mr. Berry the Auto Club was not asking for any such term, and that at both facilitations I had raised with him our serious ethical concerns about their offer to keep the recording and the allegations confidential. Second, they wanted a guarantee that the Auto Club would make a counteroffer. I told Judge Groner that I could promise the Auto Club was reviewing Mr. Berry's claim, but I could not promise a counteroffer. Judge Groner asked me to tell Mr. Berry that we would not waste his time, and that if the Auto Club was not prepared to make a counteroffer ahead of the new date, we would cancel the facilitation.

11. On the September 10 video conference, with Judge Groner, Mr. Akouri, and Mr. Berry participating, we rescheduled the facilitation for October 16, 2026, the earliest date everyone could attend. I said again that no one on the Auto Club's side had ever asked, and no one would ask, Mr. Berry, Mr. Akouri, Mr. Azakir, or anyone else to restrict their practice of law or agree not to sue the Auto Club. I reminded them that, to the extent we had responded to their offers at all, it was with reservations about whether confidentiality was even achievable in a matter involving allegations of this nature and multiple attorneys and law firms who continue to represent clients with first-

and third-party claims against the Auto Club. I added that, as we understood it, numerous other attorneys and legal staff already knew about the recording and the allegations, whether at their own firms, at other law firms, or among their experts. Mr. Akouri and Mr. Berry offered to provide, by October 1, a list of everyone who knew of the recording and where copies were kept, so that the Auto Club could evaluate their offers of confidentiality. They never provided that list.

12. Mr. Berry then spoke. As stated in my first declaration, he voiced frustration that there had not been a counteroffer and told me the Auto Club should "look deeper" at his claim, that the Auto Club is a $6 billion company with $2 billion in cash reserves, and that "it's not like I'm asking for $1 billion." He said that if the tape goes public, the Auto Club would spend well over $100 million defending nationwide class actions, so even if he could only show $1 in damage, settling at his demand would cost the Auto Club less. He then said he would agree to one last adjournment only if I represented to him that the Auto Club was "in the same ballpark" as his $40,000,000 demand. I did not make any such representation to him but responded that if the Auto Club concluded the facilitation would be a waste of time, we would let him know in advance and cancel it by October 15. He agreed to give the Auto Club until October 16 to make a counteroffer but warned this would be the last delay.

13. Mr. Berry now states that on the September 10 call he discussed the Auto Club's exposure to punitive damages and statutory attorney fees under the federal claim in his draft complaint. (ECF No. 21-1, ¶¶ 16-17.) He did not. Mr. Berry never

mentioned punitive damages, 42 U.S.C. § 1981, § 1988, or any federal claim on that call. The only substantive thing he said about his lawsuit was that it would "stay in state court," which meant he intended to drop any federal claim to avoid removal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 26th day of October, 2026 in Ann Arbor, Michigan.

Ryan D. Bohannon

**Tab 1**

* THE OFFER IS WE WILL WALK AWAY FROM FUTURE CLAIMS w/ SIMILAR CLAIM AGAINST ACG.

- I ROTE THIS TO HIM

- ~~[illegible]~~ THEY SAY "YES"

12:20 AM