# EXHIBIT 12

# DECLARATION OF THOMAS J. DOMBROWSKI

This declaration is based on my personal knowledge, and I can competently testify to the facts below if called and sworn as a witness.

1. I am an attorney licensed in Michigan and am in-house counsel for the Auto Club Group and its affiliated insurers, including Auto Club Insurance Association, Auto Club Group Insurance Company, MemberSelect Insurance Company, Fremont Insurance Company, and Meemic Insurance Company. In this declaration, I use the term "Auto Club" to refer to the Auto Club Group and those five insurers.

2. On August 3, 2026, I was one of four attorneys who represented Auto Club at an August 3, 2026 "facilitation" with Adam Berry, which was held at the law offices of Kienbaum Hardy Viviano Pelton & Forrest, P.L.C. in Birmingham, Michigan. Former Wayne County Circuit Court Judge David Groner served as the facilitator, and Robert Akouri attended as counsel for Mr. Berry.

3. I knew Mr. Akouri from before the mediation, as a result of his role as plaintiff's counsel in a number of lawsuits against Auto Club over the years.

4. At some point during the proceedings on August 3, 2026, I went to try to have a one-on-one discussion with Mr. Akouri regarding the materials he had sent via email to Michael Kramer on January 4, 2026 on behalf of Mr. Berry and regarding Mr. Berry's demands to Auto Club in connection with those materials. One of those materials was the recording of a 2024 conversation between an attorney named Hani Azakir and a claims adjuster for MemberSelect that Plaintiffs refer to in their filings in this case as the "Selective Recording." Another was the document that Plaintiffs have referred to in this case as the "Sham Complaint."

5. After Mr. Akouri and I had exchanged pleasantries, Mr. Berry walked into the room, Mr. Akouri introduced the two of us, and Mr. Berry joined our discussion, and the discussion turned to the January 4, 2026 materials and Mr. Berry's demands. During our conversation, everyone referred to the "Selective Recording" as, simply, the "Recording," so that is how I will refer to it here.

6. I began the substantive discussion by asking something very general, along the lines of, "So what is this all about?"

7. Mr. Akouri said that this was "a great case" for them. He said that he had gone to the Marko Law Firm, that they agreed it was a "great case," and that they were interested in handling the case. He told me he had talked to or retained several experts, who also believed it was a "great case." I asked Akouri what evidence they had of any systemic discrimination. His response was that they had already provided their evidence to "AAA's" attorneys.

8. Mr. Akouri stated that "AAA" does billions of dollars of business a year (he mentioned a specific dollar figure, which I do not recall) and that if the content of the Recording became public, it would be a huge problem for "AAA" in the minority communities in which "AAA" does business. He added that even a 2% or 3% loss of business to "AAA" would far exceed Mr. Berry's "settlement demand."

9. At some point during our discussion, Mr. Akouri also stated that Mr. Berry would consider accepting $30,000,000 rather than $40,000,000 to "settle."

10. During our discussion, Mr. Akouri also stated that if AAA "settled," the Recording would be destroyed and no one would ever hear it. I asked how they could be sure no copy would survive, and either Mr. Akouri or Mr. Berry replied that they had had the Recording in their possession for two years and it had not been "leaked."

11. During our discussion, Mr. Akouri volunteered that if the matter was "settled" for a substantial sum, he (Mr. Akouri) and Mr. Berry would both agree never to sue "AAA" again in the future. Adam Berry protested and said he had never agreed to that. At some point after that, Mr. Akouri said that if the sum were large enough he and Mr. Akouri could make that commitment. In response, I said something like, "it seems to me you guys are not on the same page."

12. In sum, the entire topic of not suing "AAA" in the future was introduced solely by Mr. Akouri. I never raised the subject, and I never requested any such commitment from Mr. Akouri or Mr. Berry.

13. After this initial discussion with Mr. Akouri and Mr. Berry, I rejoined other counsel for Auto Club in a separate room. Judge Groner then came to talk with us and I reported to Judge Groner some or all of what Mr. Akouri and Mr. Berry had said to me.

14. After that, Judge Groner and I returned to speak with Mr. Akouri and Mr. Berry. In Judge Groner's presence, I restated to Mr. Akouri and Mr. Berry what they had told me during our earlier discussion. I recounted how they had said they had already reviewed the matter with the Marko Law Firm and several experts and then asked them how they could be sure that no lawyer, paralegal, legal assistant, or employee for those firms and experts would not just release the Recording at some point in the future. Mr. Akouri responded by, first, walking back his assertions regarding the Marko Law Firm, saying that no actual specifics had been disclosed to them and by, second, saying that he and Mr. Berry would not release the recording and that they could be trusted.

15. I have reviewed the October 21, 2026 affidavit of Adam Berry submitted as Exhibit A in support of Defendant's Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction in this case.

16. In accordance with the facts I have set forth above, the following statement from paragraph 10 of Mr. Berry's affidavit is either false or willfully misleading: "During [the August 3, 2026 facilitation session] . . . Thomas J. Dombrowski stated that, if the parties resolved the matter, my firm would never be permitted to pursue any claims against Plaintiffs [. . .]." If I ever said anything resembling that, it was because ***I was reporting back to Mr. Akouri and Mr. Berry in Judge Groner's presence what Mr. Akouri had said to me***, and I believe that was unmistakably clear to Mr. Akouri, Mr. Berry, and Judge Groner.

17. In accordance with the facts I have set forth above, the following statements from paragraph 11 of Mr. Berry's affidavit is false: "Mr. Dombrowski then asked how Plaintiffs could be assured that the recording would not be released. [. . .] Mr. Dombrowski then asked for assurances that no one on Plaintiffs' side would release or speak about the recording." I never asked for any assurances from Mr. Akouri or Mr. Berry; ***I only asked Mr. Akouri and Mr. Berry how they could be certain about the assurances they had volunteered, without any request from me, that the contents of the recording would not be released***. I believe that was unmistakably clear to Mr. Akouri and Mr. Berry, and very likely to Judge Groner as well.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 10/26/26 in Oakland County, Michigan.

Thomas J. Dombrowski